UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

RANDY E. WOODS,                     )
                                    )
                Movant,             )
                                    )
        vs.                         )        Case No. 1:10CV00164 SNLJ
                                    )
UNITED STATES OF AMERICA,           )
                                    )
                Respondent.         )

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by

Randy E. Woods, a person in federal custody.  On December 3, 2008, Woods plead guilty before

this Court to the offense of being a Felon in Possession of a Firearm, and on March 27, 2009, this

Court sentenced Woods to the Bureau of Prisons for a term of 110 months, a sentence within the

sentencing guideline range.  Woods' § 2255 action is fully briefed and ripe for disposition.

**FACTS**

**A.      The Indictment.**

On August 21, 2008, a Grand Jury in the Eastern District of Missouri, Southeastern

Division, returned a one-count Indictment against Randy E. Woods. The Indictment charged that

on or about May 24, 2008, Woods possessed a firearm that had affected interstate commerce

after Woods had been convicted of a felony, in violation of Title 18, United States Code,

Section922(g)(1). On September 9, 2008, Woods made his initial appearance on the federal

charge. After the initial appearance, Michael A. Skrien was appointed to represent Woods.

Woods was arraigned on September 11, 2008. At that arraignment, Woods pled not guilty to the

charge.

**B.      Pretrial Motions.**

On October 10, 2008, Woods appeared with his attorney and waived his right to file

pretrial motions in his case. The case was set for a jury trial on December 3, 2008. At a pretrial

hearing on December 2, 2008, Woods appeared and informed this Court that he wanted to

proceed to trial.

**C.      Plea Hearing and Agreement.**

On December 3, 2008, Woods appeared with his attorney for the jury trial. Before a jury

could be impaneled, Woods announced that he had decided to enter a guilty plea to the charge.

The parties asked for a short recess in order to prepare a written plea agreement. That request was

granted. The plea agreement was prepared and presented to Woods and his attorney. After

Woods had discussed the plea agreement with his attorney, he announced that he was ready to

enter a guilty plea to the Indictment. This Court examined Woods as to his understanding of the

plea agreement and his knowledge of the facts. The plea agreement was an "Alford" plea

agreement, meaning that Woods was admitting that the Government could prove sufficient facts

to prove his guilt beyond a reasonable doubt as to being a Felon in Possession of a Firearm.

Pursuant to the Plea Agreement, Woods agreed to enter an "Alford" guilty plea to being a

Felon in Possession of a Firearm as charged in the Indictment. (Plea Agmt. ¶2A, 4.) The parties

did not make any recommendations as to any offense levels and left the determination of those

levels to the District Court. (Plea Agmt. ¶ 3.)

Woods stipulated to certain conduct in his written Plea Agreement. He agreed that the

Government could prove that, on May 24, 2008, he had previously been convicted of the felonies

of Manufacturing a Controlled Substance and Assault on a Law Enforcement Officer. He also

admitted that the Government's proof would be that he was in possession of a firearm on May 24, 2008, that affected interstate commerce. (Plea Agmt. ¶ 4.)

The range of punishment available for Woods was addressed in the Plea Agreement. Woods agreed that the maximum term of imprisonment for his offense was a term of imprisonment of not more than ten years. (Plea Agmt. ¶ 6A)

Woods agreed that, by entering a plea of guilty, he was waiving his right to a trial. Woods agreed that his attorney had explained his pretrial and trial rights and the consequences of waiving those rights. (Plea Agmt., ¶8) Furthermore, Woods stated that he was:

> . . . fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence, and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses. (Plea Agmt., ¶8)

Woods and the Government agreed to waive their right to appeal all non-jurisdictional issues including, but not limited to, any issues related to pretrial motions, hearings and discoveryand any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea. Both parties reserved their right to appeal any sentencing issue, including the length of the sentence, the determination of the Total Offense Level, and the Criminal History Category. (Plea Agmt., ¶2C(1))

**D.    The Presentence Report.**

Following the plea, a Presentence Investigation Report (P.S.R.) was prepared by United States Probation Officer Denise J. Broom. The P.S.R. reflected Woods' base offense level of 24, because Woods had previously been convicted of one violent felony and one serious drug crime,

pursuant to U.S.S.G. §2K2.(a)(2).  Four additional levels were added because Woods used or possessed the firearm in connection with another offense. No levels were subtracted for acceptance of responsibility. The final offense level was calculated to be 28. (P.S.R. ¶20-28)

A Criminal History Category was calculated for Woods. The P.S.R. reflected that Woods' first conviction occurred on December 18, 1989, in the Circuit Court of Butler County, Missouri, for the misdemeanor offenses of Driving While Intoxicated and Driving Under Suspension.  Due to the age of these convictions, they did not receive any criminal history points. (P.S.R., ¶31-37)

On November 13, 1991, Woods was convicted of two misdemeanor charges of Possession of Marijuana in the Circuit Court of Cooper County, Missouri.  No criminal history points were assessed for these convictions due to their age. (P.S.R., ¶38-40)

On April 21, 1997, Woods was convicted of the misdemeanor crime of Assault in the County Criminal Court of Dallas County, Texas. This conviction did not receive any criminal history points due to its age. (P.S.R., ¶41-42)

On March 6, 2002, Woods was convicted of the misdemeanor crime of Stealing in the Circuit Court of Carter County, Missouri. Woods was fined $50 for this conviction. One criminal history point was assessed for this conviction. (P.S.R., ¶43-45)

On May 7, 2003, Woods was convicted of the felony offenses of Manufacturing a Controlled Substance and Assault on a Law Enforcement Officer in the Circuit Court of Ripley County, Missouri. Woods received sentences of fourteen years imprisonment for each conviction, with each sentence being suspended. Woods was then placed on probation for five years. Woods received two criminal history points for each of these two felony convictions. (P.S.R., ¶46-53)

Two additional criminal history points were assessed to Woods, pursuant to

U.S.S.G.,§4A1.1(d), because Woods was on probation at the time of his federal offense conduct. Woods accumulated a total of seven criminal history points, resulting in a Criminal History Category IV. Woods' Guideline range of imprisonment, with a Total Offense Level of 28 and a Criminal History Category of IV was 110 to 120 months. The statutory maximum range of punishment was 120 months. (P.S.R., ¶54-56, 80)

**E.      Objections to the Presentence Investigation Report.**

Prior to the sentencing hearing, Woods filed his objections to the P.S.R. In his objections, he denied the factual assertion that he used the firearm in connection with another felony offense, resulting in an additional four offense levels. Woods asserted that he should receive a reduction of two levels for acceptance of responsibility. Woods also requested a downward departure for an alleged overstated criminal history pursuant to U.S.S.G., §4A1.3(b).

**F.      Offense Conduct.**

Woods' offense conduct was detailed in his Presentence Investigation Report and the Plea Agreement. That conduct is set forth below.

On May 24, 2008, Carter County Deputy Sheriff Brannum was notified that two probation violation arrest warrants had been issued for Randy Woods. The deputy drove to Woods' home to contact him, but no one answered the deputy's knock. The deputy continued to try to contact Woods at his home during that day, but was unable to locate him. Shortly after midnight, Deputy Brannum drove to the Woods residence again. He noticed that Woods' personal vehicle was parked at the home, along with another vehicle. Again, no one answered the deputy's knock at the door. The deputy drove away from the home, but returned to surveil it from a distance.  After a few minutes, Deputy Brannum observed a vehicle leave the residence and

-5-

drive away. The deputy stopped the vehicle. The driver was Janet Burlbaugh, a female friend of

Woods. The driver stated that she and Woods were in the home when the deputy knocked on the

door. (P.S.R., ¶7, S.Tr., p. 13, 14)

Burlbaugh related to the officer that when the deputy's car approached Woods' residence,

Woods turned the lights out in the home and told Burlbaugh to stay quiet. Burlbaugh observed

Woods manipulating a handgun as if he were loading it. Woods then stated that he was"wanted"

and that he didn't have any intention of going back to prison. Burlbaugh also reported that

Woods stated that there would be some kind of shootout if the deputy tried to arrest him. (P.S.R.,

¶7, S.Tr., p. 14, 15)

The deputy returned to Woods' residence immediately after his contact with Burlbaugh.

He discovered that Woods' personal vehicle was no longer parked at the residence. Officers

began searching for Woods and speaking to other people in the community about his location. A

group of people who were contacted at another home reported that they had seen Woods earlier

that evening with a loaded handgun. (P.S.R., ¶8)

When officers returned to Woods' residence later that same night, they found Woods'

vehicle in the driveway. The Carter County sheriff contacted Woods on Woods' cellular

telephone to negotiate Woods' surrender. Woods remained in his home for several hours as the

officers surrounded the home and waited outside. Several hours after the officers surrounded the

home, Woods surrendered to the sheriff. The officers entered Woods' home after his arrest. They

discovered that barricades of furniture had been placed in the house between the front door and

the bedroom. (P.S.R., ¶9, S.Tr., p. 16

Woods consented to a search of his home. During that search, the officers discovered a

Herbert Schmidt, .22 caliber revolver and a box of ammunition hidden in an air vent in the bathroom. That revolver was manufactured in West Germany and affected interstate commerce prior to its discovery in Missouri. Deputy Brannum informed Woods as to the discovery of the revolver and asked Woods what he intended to do with the handgun. Woods stated that he did not want to go back to prison and had intended to shoot anyone trying to arrest him or be killed in the process. (P.S.R., ¶10, 11, Plea Agmt., ¶4, S.Tr., p. 16)

       **G.    The Sentencing Hearing.**

A sentencing hearing was held on March 27, 2009. The Government called John Taylor, the ATF case agent. Taylor testified that he interviewed Janet Burlbaugh, Deputy Brannum and Probation Officer Charles Greer. Taylor testified that Janet Burlbaugh reported the events occurring in Woods' residence when she was there, including Woods' statement that Woods was not going back to prison and that Woods would shoot anyone trying to arrest him. Taylor testified that Woods made a similar statement to Deputy Brannum. Taylor also testified that Woods confessed to possessing the revolver to Officer Greer. Woods' attorney did not object to any of this testimony and cross-examined Taylor as to Woods' statements. (S.Tr., p. 13-19)

After hearing the Government's evidence, this Court ruled that the Government had met its burden of proving that Woods used or possessed the firearm in connection with another felony offense. (S.Tr., p. 23) This Court further denied Woods' request for a reduction of two levels for acceptance of responsibility, finding that Woods falsely contested his relevant conduct. (S.Tr., p. 23, 24) Finally, this Court denied Woods' request for a downward departure for an overstated criminal history. (S.Tr., p. 32)

Woods then argued that he should receive a downward variance after consideration of the

sentencing factors listed in Title 18, United States Code, Section 3553(a). That request was also denied. (S.Tr., p. 28-32)

This Court imposed a sentence upon Woods of 110 months imprisonment, to be served consecutively to any undischarged state terms of imprisonment. Woods was placed on supervised release for two years following his release from prison. Woods was also ordered to pay a $100 special assessment.

### F.    The Appeal.

On April 3, 2009, Woods filed his Notice of Appeal. He raised the following issues: (1)whether the District Court erred in relying on the hearsay testimony provided by ATF SA John Taylor at the sentencing hearing to support the sentencing enhancement for using a firearm in connection with another felony offense; (2) whether the District Court abused its discretion by denying Woods a two-level reduction in his offense levels for acceptance of responsibility; and(3) whether the District Court erred by denying Woods' motion for a downward departure due to an overstated criminal history category. On March 3, 2010, the Eighth Circuit Court of Appeals filed its opinion affirming the conviction and sentence of Woods. The appellate court specifically held that the District Court did not err in accepting SA Taylor's hearsay testimony and that the sentencing enhancement for using the firearm in connection with another felony offense was supported by the evidence. The appellate court also found that the District Court did not err in denying Woods any reduction of levels for acceptance of responsibility and that there was no error in denying Woods' motion for a downward departure for an overstated criminal history category. *United States v. Woods*, 596 F.3d 445 (8th Cir. 2010).

On March 15, 2010, Woods filed a pro se request for the appellate court to rehear the

issues in his case and/or for the en banc court to hear those issues. That motion was denied on April 15, 2010.

### G. Petition for Post-Conviction Relief Pursuant to §2255.

On October 18, 2010, Woods filed his Petition under 28 U.S.C. §2255, asking that this Court set aside Woods' sentence in order to recompute his offense levels by allowing Woods a two level reduction for acceptance of responsibility and then to impose a new sentence on that offense level computation. Woods alleged four grounds for this relief.

## APPLICABLE LAW

### A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. §2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225

(1stCir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir.1992).

## B.    INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation

fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's"scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of *Strickland* to instances involving guilty pleas. A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U.S.

at 267.

### C.     EFFECT OF GUILTY PLEA ON APPEALABLE ISSUES

A defendant who enters a plea of guilty thereby waives his right to request relief under 28U.S.C. § 2255 with the exception of those issues related to jurisdiction only. *See*, e.g., *Hill v. United States*, 928 F.2d 303 (8th Cir. 1991); *United States v. Stewart*, 972 F.2d 216, 217-18 (8thCir. 1992); *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989).

When a guilty plea is delivered by the Movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) citing *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct.1602, 1607 (1973). A guilty plea operates as a break in the chain of events of the criminal process. *Tollett,* 411 U.S. at 267. Once a criminal defendant solemnly professes his guilt before the court, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* Only the voluntary and intelligent character of the guilty plea may be attacked. *Id.* Although the *Tollett* decision concerned state prisoner habeas corpus petitions, the Eighth Circuit adopted and applied its rationale to motions under Section 2255. *Bass*, 739 F.2d at 406.

Even a defendant's reliance on his counsel's opinion as to the calculation of defendant's sentence would not make a defendant's plea involuntary, where the record reveals that the defendant was fully informed and knowingly and voluntarily pleaded guilty. *See Hollis v. United States*, 687 F.2d 257, 260 (8th Cir. 1982); *Roberson v. United States*, 901 F.2d 1475, 1478 (8thCir. 1990).

## D.     WAIVER OF APPELLATE RIGHTS AND RIGHT TO POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. §2255

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been upheld by the Eighth Circuit. *See United States v. Rutan,* 956 F.2d 827, 829 (8th Cir. 1992)(waiver of the right to appeal a sentence contained in a plea agreement is enforceable)*; United States v. His Law*, 85 F.3d 379 (8th Cir. 1996). In *DeRoo v. United States*, 223 F.3d 919 (8thCir. 2000), DeRoo pleaded guilty pursuant to the terms of a plea agreement providing that DeRoo waived any right to appeal the judgment and sentence and a waiver of all rights to contes this conviction or sentence in any post-conviction proceeding pursuant to 28 U.S.C. § 2255. After being sentenced, however, DeRoo filed a motion under 28 U.S.C. §2255 to vacate, set aside, or correct his sentence, claiming that he had been denied effective assistance of counsel on various grounds. In addressing the Government's claim that DeRoo had waived his right to file a motion for post-conviction relief under §2255, the Eighth Circuit noted that, "As a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context." *Id*. at 923.

The chief virtues of a plea agreement of speed, economy, and finality "are promoted by waivers of collateral appeal rights as much as by waivers of direct appeal rights. Waivers preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." *Id*. However, "the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary." *Id*., citing *United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999). "A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to

argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel." *Id*. at 924. DeRoo had argued in his §2255 motion that counsel's failure to file a motion to dismiss had induced him to plead guilty, "and that but for counsel's errors he would have proceeded to trial." *Id*.

The Eighth Circuit has determined that a waiver of a right to appeal is enforceable (1) if knowingly and voluntarily made, and (2) if the sentence imposed is in accordance with the negotiated agreement. *Rutan*, 956 F.2d at 829. To be effective, Movant need not know with certainty what his sentence might be at the time of the waiver. *Id.* at 830. ("While Rutan might not have known the exact dimension of the sentence, he knew he had a right to appeal his sentence and that he was giving up that right.")

## DISCUSSION

**Ground One – Abuse of Discretion - District Court Denied Woods a Two Level Reduction in his Offense Levels for Acceptance of Responsibility**.

This issue was presented to the Eighth Circuit Court of Appeals. That Court determined that there was no error in the District Court's decision not to grant Woods any reduction in offense levels for acceptance of responsibility. Their decision was guided by this Circuit's authority in resolving such issues. The standard of appellate review is set forth below, mainly to set forth the process of appellate review, and to demonstrate why Woods' allegations should be denied without an evidentiary hearing.

**Standard of Appellate Review**

It is the defendant's burden to demonstrate that he has clearly accepted responsibility. The district court's factual determination as to whether the defendant has accepted responsibility is

-14-

entitled to great deference. This Court will reverse only when it is so clearly erroneous as to be without foundation. *United States v. Wallenfang*, 568 F.3d 649, 661 (8th Cir. 2009). The mere act of pleading guilty does not entitle the defendant to an acceptance of responsibility reduction. The pivotal issue is whether the defendant shows a sincere recognition and affirmative responsibility for the offense as well as sincere remorse. The purpose of acceptance of responsibility reduction is to distinguish a sincerely remorseful defendant from a defendant not reflecting penitence. *United States v. Card*, 390 F.3d 592, 595 (8th Cir., 2004), quoting *United States v. Knight*, 905 F.2d 189, 192 (8th Cir. 1990).

**This Court Did Not Err in Denying Woods a Reduction in Offense Levels for Acceptance of Responsibility.**

In this point, Woods contends that this Court erred by denying his motion for a two-level reduction for acceptance of responsibility. The Government contends that the facts and circumstances of Woods' plea and sentencing hearing provide a sufficient basis to conclude that this Court did not clearly err in refusing to grant Woods' motion.

U.S.S.G., §3E1.1(a) provides the authority for granting a two-level reduction in offense levels for acceptance of responsibility:

§3E1.1 Acceptance of Responsibility

(a)If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

Application Note 1 provides additional guidance as to the factors to be considered by the district court. It states, in relevant part:

1.      In determining whether a defendant qualifies under subsection (a),appropriate considerations include, but are not limited to, the following:

-15-

>  (a) *truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct)*. Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. *However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility*:
> . . .
>
>  (h) *the timeliness of he defendant's conduct in manifesting the acceptance of responsibility*. (Emphasis furnished.)

The nature of the defendant's guilty plea is also relevant to this inquiry. Here, Woods entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970). An *Alford* plea allows the defendant to plead guilty without admitting guilt by acknowledging the government's evidence is sufficient to obtain a conviction. *United States v. Mathis*, 451 F.3d939, 940, FN2 (8th Cir. 2006). The district court may consider whether the defendant has entered an *Alford* plea as a relevant factor when deciding whether to grant the acceptance of responsibility reduction. *United States v. Morris*, 139 F.3d 582, 584 (8th Cir. 1998), citing *United States v. Harlan*, 35 F.3d 176, 181 (5th Cir. 1994). Woods has clearly failed to carry his burden of demonstrating that he accepted responsibility. The record here supports the position that Woods never accepted responsibility for his crime, he merely accepted punishment. He did not show any remorse for his crime, or penitence. His post-plea pleadings established that he never accepted any fault for his criminal conduct. All of these facts, which were evident in the sentencing record for this Court to consider, establish that the this Court's decision to deny Woods' request for an acceptance of

-16-

responsibility reduction was not an abuse of the court's discretion.

After his guilty plea, but before his sentencing hearing, Woods filed a Sentencing Memorandum, which stated:

> Defendant contends that his father, who lived in the same residence, had hidden the gun in a vent in the floor of the residence, and *that Defendant was unaware of its presence*. Defendant's sister, Rhonda Webb, would offer corroboration. Counsel had discussions with Ms. Webb, who indicated that their father, Ben Woods, was paranoid during the time he lived at the residence, and would frequently hide firearms. She indicated that her father constantly thought "someone was out to get him," and hid guns for protection. She also indicated that her father had threatened to kill her during this time. (Woods' Sentencing Memo, p. 3) (Emphasis furnished.)

In his Sentencing Memorandum, Woods further asserted that he did not use the firearm in connection with another felony offense, but that he was merely waiting to surrender to a law enforcement official that he trusted. Woods stated, in his Memorandum:

> Mr. Woods never stated he would harm any officers, nor did he ever say that he would not leave his residence without physical harm to any other individual. (Woods' Sentencing Memo, p. 5)

That statement was clearly refuted by Woods' statements to Janet Burlbaugh and Deputy Brannum. This Court properly relied on those statements to make its finding that Woods used the firearm in connection with another felony offense.

Woods did not remain silent on the issue of using the firearm in connection with another felony offense, as he would have been permitted to do. Instead, he affirmatively disputed the statements in the P.S.R. and his own confession to Deputy Brannum.

Under Application Note 1 of U.S.S.G., §3E1.1, a defendant who falsely denies relevant conduct that the district court believes is true has acted in a manner inconsistent with acceptance of responsibility. *See also, United States v. Madrigal-Lopez*, 236 Fed. Appx. 233, 2007

-17-

SL1531612 (C.A. 8 2007) (Unpublished; copy attached)). Woods falsely contested whether he

used or possessed the firearm in connection with another felony offense. Based on SA Taylor's

testimony, this Court found that Woods used or possessed the firearm in connection with another

felony offense. Thus, Woods' objection, which amounts to a false denial of his relevant conduct,

demonstrates his lack of acceptance of responsibility for his crime.

In a similar case, this Circuit upheld the denial of acceptance of responsibility to a

defendant who falsely contested his relevant conduct and his own statements. *See United States*

*v. Annis*, 446 F.3d 852, 857-58 (8th Cir. 2006). In *Annis*, the defendant contested, at sentencing, a

drug quantity finding based on the defendant's own statements by asserting that his prior

statement was unreliable. The *Annis* panel noted that *Annis* did not present a situation where the

defendant merely remained silent and required the government to meet its burden of proof for the

sentencing enhancement. Annis went further than remaining silent; he falsely contested the

reliability of his prior statement concerning his relevant conduct. This Circuit affirmed the

district court's finding in *Annis* that the defendant falsely contested his relevant conduct and thus

did not merit the acceptance of responsibility reduction. *Annis*, 446 F.3d at 857-58. Similarly,

Woods also falsely denied his relevant conduct and prior statements concerning his use and

possession of the firearm in connection with his intent to assault Deputy Brannum. It is clear that

his denial is inconsistent with accepting responsibility, as was the case in *Annis*.

The last subsection of U.S.S.G., §3E1.1, Application Note 1 sets out another factor for

this Court to consider, the timeliness of the defendant's conduct in acceptance of responsibility.

Woods entered his guilty plea on the morning of his jury trial, with the jury, witnesses and court

personnel all present. (Plea tr., p. 6) His last-minute guilty plea was another factor for the this

Court to consider in deciding whether to grant Woods a reduction for acceptance of responsibility.

   U.S.S.G., §3E1.1, Application Note 5 provides:

   5.  The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility for this reason, the determination of the sentencing judge is entitled to great deference on review.

   This Court had the opportunity to participate in Woods' pretrial hearing and guilty plea. The Court was familiar with the P.S.R. and all the issues raised by Woods. This Court was in a position to evaluate all of the factors associated with determining whether Woods should receive a reduction for acceptance of responsibility.

   A defendant who enters a guilty plea is not entitled to an adjustment under U.S.S.G.,§3E1.1 as a matter of right. *Winters, supra*. Woods erroneously treats his guilty plea as entitling him to the reduction for acceptance of responsibility, without analyzing the factors to be considered. This Court's decision not to grant that reduction was based on a careful review of the facts.

   A defendant bears the burden of establishing his entitlement to a downward adjustment for acceptance of responsibility. *United States v. Tjaden*, 473 F.3d 877, 879 (8th Cir. 2007). Woods has failed to carry his burden to show his entitlement to acceptance of responsibility.

   Furthermore, Woods waived his right to bring a 2255 petition as to any matter except those related to prosecutorial misconduct and ineffective assistance of counsel. (Plea Agmt.¶2(C)(2))  By waiving his right to contest the rulings of the this Court, Woods has given up his right to complain about this issue in his 2255 petition. Woods' complaints for his Issues I, II and III all assert that this Court erred. Woods has given up his right to bring these issues in this

petition. Woods only claims that Issue IV was due to ineffective assistance of counsel. Issue IV is

the only issue that survives even a cursory review, considering that Woods waived his right to

contest these issues by a Section 2255 petition.

This issue does not require an evidentiary hearing to be disposed of since it can be

completely resolved based on the record in this case.

**Ground Two – Constitutional Violation - Denial of Acceptance of Responsibility.**

In this issue, Woods claims that this Court denied his right to be treated fair and equal to

any other person. The Government is presuming that Woods is attempting to state an Equal

Protection claim. Woods does not set forth any facts detailing why his Equal Protection rights

were violated, except to state that he did accept responsibility.

Woods does not claim to be a member of a protected class or that he was denied a

fundamental right. *See United States v. House*, 939 F.2d 659, 664 (8th Cir. 1991) (rejecting equal

protection challenge to the guidelines because when a statute does not discriminate on the basis

of race or affect a fundamental right, "the distinction between penalties need only be rationally

related to a legitimate governmental objective.") Therefore, he must demonstrate that his denial

of a reduction for acceptance levels is not rationally related to a legitimate government purpose.

*United States v. Ellefson*, 419 F.3d 859, 866 (8th Cir. 2005). The appellate decision affirming

Woods' conviction and sentence disposes of that theory, in that the appellate court's decision

supported this Court's finding that Woods falsely denied possessing the firearm in connection

with another felony offense. That finding served a legitimate government purpose, in that the

government has a rightful interest in preventing defendants from falsely denying relevant

conduct. Woods has not stated any Equal Protection claim that may be grounds for the relief that

he has sought.

This issue was also waived by Woods in his plea agreement in that it is not related to ineffective assistance of counsel or prosecutorial misconduct.

Again, this issue may be decided upon the record without an evidentiary hearing.

**Ground Three – Illegal Sentence - Failure to Grant Reduction of Levels for Acceptance of Responsibility.**

In this point, Woods claims that his sentence was illegal. He appears to claim that his sentence was improperly calculated by his not receiving a reduction of offense levels for acceptance of responsibility. Woods does not set out any facts or authority as to why his sentence is illegal, other than to restate his argument that he believes that he should be been granted a reduction of offense levels for acceptance of responsibility.

An "illegal sentence" has an exact meaning in this Circuit. "A sentence is illegal when it is not authorized by law; for example, when the sentence is in excess of a statutory provision or otherwise contrary to the applicable statute. A sentence is not illegal if the punishment meted out was not in excess of that prescribed by the relevant statutes or the terms of the sentence itself are not legally or constitutionally invalid in any other respect." *United States v. Andis*, 333 F.3d 886, 892 (8th Cir. 2003). In Woods' case, the statutory maximum punishment for a felon in possession of a firearm was a sentence of ten years. 18 U.S.C. §924(A)(2). Woods' Plea Agreement also contained this limitation. (Plea Agmt. ¶6A.) If Woods had been an Armed Career Criminal, his maximum punishment would have been life. 18 U.S.C. §924(e). He was not an Armed Career Criminal; therefore, his maximum punishment was ten years, or 120 months. Woods received a sentence of 110 months, less than the maximum sentence allowed by statute.

-21-

Because his sentence was within the maximum sentence allowed by law for the crime he committed, the sentence is not illegal.

This issue may be disposed of without an evidentiary hearing as there is no need for evidence to be developed for a full resolution.

**Ground Four - Ineffective Assistance of Counsel - Failure to Advise Woods, Refusal to Communicate, Threat to Refuse to Represent Woods.**

In this issue, Woods makes the vague allegation that his "attorney never advised the defendant he could have raised any other grounds", that "counsel refused to communicate on the case" and that "attorney further refused to handle the case if the defendant did not agree to his grounds." Woods does not state what his other "grounds" were, or what effect those grounds would have had on his case or what decision he would have changed if he received different advise. Because Woods has not set forth any factual matters, the Government did not respond to this issue, except to note that this issue is nothing more than a vague and conclusory allegation which may not serve as the basis for relief pursuant to § 2255. Woods' allegation does not provide this Court with enough information in order to determine what advice Woods should have received or what the alleged deficiencies were in his representation by counsel or how those alleged deficiencies affected his conviction or sentence.

However, the record provides ample evidence that Woods was fully satisfied as to his attorney's performance. On December 2, 2008, this Court conducted a pretrial hearing, as the jury trial was set to begin the next day. Woods was present, along with his attorney and the Government's attorney. At the beginning of the hearing, this Court told Woods that he had received a letter from Woods that indicated Woods was having concerns with his attorney.

Woods' attorney requested that any discussion on that matter be held in camera without

the Government's attorney present. The Government's attorney then left the courtroom. (Hearing

Tr. P. 2, 3) In relevant part, the following colloquy was held:

| | |
|---|---|
| Court: | Mr. Woods, according to your letter, basically your comments here is that  feel if I'm not receiving adequate guidance from Mike Skrien and I don't feel as if he's honestly tried to help me. He's failed to listen to my requests over subpoenas and several other issues, and that's basically all that you've set out here.

I do notice in the court file that Mr. Skrien has obtained subpoenas for three different witnesses, Rhonda Webb, Robbie Hanstein and Ron Morris.

Are there other people that you - - |
| Woods: | Okay. You know me and my lawyer here, Mr. Skrien, has talked since I've come up here - -
. . . |
| Woods: | And my biggest concern now, and he's told me I don't got to worry but in my mind and in my heart I do worry that since I wrote this letter against him and asked for a new lawyer that is he going to try his hardest, you know, and do his best for me. Now he has assured me he has but I still have that doubt because, you know, once you kicked something, you don't - - you may get bit. |
| Court: | I have confidence in Mr. Skrien and I'm certain that he will give you every bit of his ability as a criminal defense lawyer in representing you in this case and unless there's something specific that you want to call to my attention about that - - |
| Woods: | Okay. Then I want to withdraw my request for a new attorney. I'll keep Mr. Skrien, sir. |
| Court: | All right. And in regard to the subpoenas, I take it these were the people that you wanted to subpoena. |
| Woods: | Yes.
. . . |

| | |
|---|---|
| Court: | Is there anything else that - - I take it it's mainly the concern over making sure these people were subpoenaed; right? |
| Woods: | Yeah, and I just - - just the way you feel how everything's happening with this, but I mean like I said, me and him has discussed everything. |
| | He's assured me, he's told me his side. I've said my questions and that was my biggest concern now that, you know, have I offended him or whatever and he's assured me I haven't, so we'll just - - I'd like to stay with him and let's just pray for a fair trial. |
| Court: | Well, you'll get a fair trial, I promise you that, but in the meantime I will show or make a docket entry that your request to change lawyers is withdrawn and then we'll proceed and we can call Mr. Sorrell. |
| | (Hearing Tr. P. 4 - 6) |

The next day, on December 3, 2008, Woods and his attorney appeared to begin a jury trial on Woods' Indictment. A short pretrial conference was held as to some evidentiary issues. (Plea Tr. p. 2 - 6) This Court called for a recess to seat the jury. Before the jury could be brought in, Woods announced that he wished to enter an *Alford* guilty plea to the Indictment. A written plea agreement was prepared and Woods was sworn prior to his examination by this Court. During Woods' plea hearing, the following colloquy was held:

| | |
|---|---|
| Court: | And now a matter that went over yesterday is your right to have a lawyer appointed to represent you. |
| | Mr. Skrien has been appointed by the Court to represent you and you told me yesterday that you were satisfied with the way that he's represented you. Is that still true today? |
| Woods: | Yes, sir. |
| Court: | And you also said that as of yesterday afternoon he'd done everything you asked him to do by subpoenaing witnesses and investigating your case. Is that still true today? |

-24-

| | |
|---|---|
| Woods: | Yes, sir. |
| Court: | So I take it you're still satisfied with the way he's represented you in this case? |
| Woods: | Yes, sir. |
| Court: | No complaints? |
| Woods: | No, sir. |
| Court: | Is there anything you feel that your attorney should have done but didn't do in representing you in this case? |
| Woods: | No, sir. |

(Plea Tr. p. 8)

This Court then reminded Woods of the statutory penalties that could be imposed upon

Woods:

| | |
|---|---|
| Court: | Now the maximum sentence for this offense of being a convicted felon in possession of a firearm is up to ten years imprisonment or a fine not to exceed $250,000 or a combination of fine and imprisonment and, in addition, in the event that you were released from that prison term, you would also be subject to a period of supervised release not to exceed three years after your release. Do you understand that? |
| Woods: | Yes, sir. Yes, sir. |
| Court: | So it may well be that after considering your criminal history and the sentencing guidelines that I might impose the maximum sentence against you. You understand that, too? |
| Woods: | Yes, sir. |

(Sent. Tr. pp. 12, 13)

Woods told this Court that he was fully satisfied with his attorney at least twice in the

days before his trial was scheduled to begin. His complaints at that time involved only the

-25-

presence of defense witnesses; a matter that his attorney had fully addressed by the time of the trial. Now, at this late date, Woods claims that his attorney failed to communicate with him and that his attorney refused to represent him. The record of Woods' admissions concerning that representation completely refutes Woods' allegations of deficient performance by his attorney. In fact, Woods' attorney followed the wishes of his client and was ready to either try the case or assist Woods in pleading guilty. Woods made a knowing choice as to whether he proceeded to trial or entered a guilty plea. There was no deficiency in the representation by Mr. Skrien.

Mr. Skrien has provided an affidavit concerning this issue, which is attached to the Government's Response as Exhibit 2. In that affidavit, Mr. Skrien states that he does not have any idea what these other grounds were for Woods' trial or appeal. Woods has not stated any facts with enough particularity to enable this Court to conclude that his representation was ineffective. This issue may be decided against Woods without the need for an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, Woods' § 2255 motion is **DENIED**.

**SO ORDERED** this 10th day of November, 2011.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

-26-